**SO ORDERED.**

**SIGNED this 20 day of May, 2009.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

IN RE:

**MICHAEL TODD BUCK
d/b/a MICHAEL T. BUCK FARMS,**

    **Debtor.**                                **CASE NO: 08-01210-8-JRL
                                                  CHAPTER 7**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

vs.

**MICHAEL TODD BUCK**                      **ADVERSARY PROCEEDING
d/b/a MICHAEL T. BUCK FARMS,**      **08-00058-8-JRL
and JACK BUCK,**

    **Defendants.**

_____

**ORDER**

    This case came before the court on the United States' motion for summary judgment. On April 29, 2009, the court conducted a hearing on this matter in Raleigh, North Carolina.

**JURISDICTION AND PROCEDURE**

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

**UNDISPUTED FACTS**

1. Michael Todd Buck, the debtor, filed for relief under Chapter 7 of the Bankruptcy Code on February 25, 2008.

2. When the debtor's petition was filed, two outstanding loans were due to the Farm Service Agency ("FSA"): (1) an equipment loan made in April 2006 and (2) an operating loan made in April 2007.

3. Both loans were secured by the debtor's farm equipment, crops, and proceeds therefrom. Disposition of any such collateral was not authorized.

4. Jack Buck, the debtor's brother, helped the debtor farm throughout 2007. In exchange for labor, the debtor allowed his brother to keep crop proceeds. The debtor also paid his brother from the "left over" portion of the operating loan. In addition, the debtor paid his brother's rent from the farm operating account.

5. A 7600 Ford tractor ("7600 tractor") was listed as equipment on the debtor's security agreement with FSA, and on the debtor's asset sheets as held for the benefit of FSA. The tractor was traded in for a John Deere tractor in March 2007 without FSA knowledge or approval.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

**DISCUSSION**

11 U.S.C. § 523(a)(6) provides that a debtor is not discharged of any debt for willful and malicious injury by the debtor against another entity.  The court must therefore determine if the actions of the debtor in allowing his brother to keep crop proceeds and trading in the 7600 tractor is willful and malicious within the meaning of § 523(a)(6).

Although at first reading, "wilful and malicious injury" may appear as a single statutory requirement, it is in fact two distinct requirements.  A party seeking to avoid discharging the debt must prove by a preponderance of the evidence that the debtor caused both wilful injury and malicious injury.  See, In re Rountree, 2002 WL 832669 (Bankr. M.D.N.C. 2002).  In addressing the first requirement of willfulness, the instructive case of In re Geiger notes that the word

"injury" in this context is modified by the word "wilful." 523 U.S. 57, 62 (1998). Therefore, the first prong of nondischargeability under § 523(a)(6) mandates a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." In re Geiger, 523 U.S. at 61.

As Judge Stocks correctly determined, the key to applying Geiger is first to identify the injury. In re Rountree, 2002 WL 832669 at *7. In a conversion of collateral case the actual willful injury occurs when the collateral is disposed of, and the proceeds are used for a purpose other than repayment of the debt. Id.; In re Russell, 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001). This court has previously acknowledged that such an injury qualifies as non-dischargeable. *See*, Labrecque v. Armada Manufacturing Co., 1999 WL 1939980 (E.D.N.C. 1999). The court finds no reason to forego its prior position.

Without hesitation, the debtor acknowledges that he paid his brother, Jack Buck, for help with farming. Jack Buck was paid by a portion of the corn crop he helped harvest. When Jack Buck later sold the corn, he kept the proceeds for his own benefit. By allowing his brother to sell the corn, the debtor avoided having a joint check issued to himself and FSA as payees. With respect to the 7600 tractor, the debtor openly acknowledges that he traded in the 7600 tractor in March 2007 for a John Deere tractor. FSA is not unaccustomed to farm equipment trade-ins. Procedurally, however, when a refinancing occurs FSA should be given notice so it can establish its lien position on the new collateral. When the debtor disposed of the corn and tractor he inflicted a willful injury upon FSA.

The second prong of the § 523(a)(6) analysis, malice, means that the debtor was knowledgeable that his actions were wrong. *See*, Rountree, 2002 WL 832669 at *8; In re

4

Russell, 262 B.R. at 455. Knowledge may be implied through circumstantial evidence of the debtor's conduct. Id.; *also see*, In re Stanley, 66 F.3d 664, 667 (4th Cir. 1995). Ill will has no bearing on the definition of malice in the present case. Id.

There is no dispute that FSA had valid liens on the debtor's crops, crop proceeds, and equipment. The debtor's malice, therefore, is evidenced not by the his actions but rather his inactions. At no time in completing loan documentation did the debtor reflect expenses for hired labor. FSA was never informed that such expenses were being covered through crop proceeds. The reverse is true about the 7600 tractor. The debtor continually included the 7600 tractor on required loan documentation even after the trade-in. At the hearing, FSA asserted that it first learned of the converted tractor when field agents conducted a site visit in January 2008, ten months after the trade-in. The lack of accurate information provided to FSA, coupled with debtor's undisputed understanding of the loans and liens, constitutes a malicious injury.

Jack Buck also received compensation from the debtor's FSA operating loan account. Compensation was in the form of cash and rent payments. FSA argues that this too is a willful and malicious injury because the debtor failed to provide information about hired labor. The court disagrees. Even if not appropriately disclosed, monetary compensation for work done to tend and harvest the debtor's crop fits within the common understanding of an operating account. Also, rent payments in this situation might be another form of compensation, not a personal expense. It is not an unusual practice for farmers to provide lodging for employees, whether actual living quarters or rent reimbursement. Unlike corn crop proceeds, these payments are not conversions of collateral, and FSA has failed to show any contractual provision that would require the debtor or Jack Buck to reimburse the funds paid to Jack Buck from the

5

farm operating account.  Even if such a provision were shown, it is likely merely a breach of contract by the debtor and not a wilful and malicious injury.

Based on the foregoing, the United States' motion for summary judgment is GRANTED as to the crop proceeds and tractor, and DENIED with respect to the operating account funds. The sum of $21,211.53, the combined amount of the converted crop proceeds and refinanced tractor, shall be nondischargeable and survive the debtor's bankruptcy case.  Furthermore, pursuant to 28 U.S.C. § 1334, judgment shall be rendered against Jack Buck in the amount of $16,411.53 for the benefits received from the converted crop proceeds.   The Assistant United States Attorney is directed to inform the court within ten days of whether she desires to present further evidence on the issue of the operating account issue, or is instead content to allow a final judgment to be entered resolving all matters consistent with this order.

END OF DOCUMENT